**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:

    DANIEL R. FINNEY,　　　　　　　　　　Bankruptcy No. 00-27159 JKF
    Debtor　　　　　　　　　　　　　　　　　Chapter 7

    DENNIS J. SPYRA
    Plaintiff

v.　　　　　　　　　　　　　　　　　　　　Adversary No. 04-2539
　　　　　　　　　　　　　　　　　　　　　**Related to Doc. No. 1, Complaint Objecting**
    DANIEL R. FINNEY　　　　　　　　　　**to Discharge Under 11 U.S.C. §727**
    Defendant

Appearances:

    Dennis J. Spyra, Esquire, and Alan E. Cech, Esquire, for Plaintiff
    Gary W. Short, Esquire, and Phillip S. Simon, Esquire, for Debtor
    Carlota M. Bohm, Esquire, Trustee and Counsel for Trustee

**MEMORANDUM OPINION**[1]

The matter before the court is an objection to discharge filed by former counsel for Debtor, Dennis Spyra, pursuant to 11 U.S.C. §727. A trial was held on February 4, 2005.

Based on the testimony and evidenced adduced at trial, Debtor's discharge will be denied. Prior to trial the parties filed stipulated facts. *See* Adv. No. 04-2539 at DN 14. The

---

[1]The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

court finds the pertinent facts to be as follows pursuant to the stipulation and as established by the evidence.

Debtor filed his chapter 11 bankruptcy petition in the United States Bankruptcy Court in the Western District of Pennsylvania on September 13, 2002. Dennis J. Spyra was his appointed counsel. An order was entered August 1, 2002, permitting Mr. Spyra to withdraw as counsel. Bankr. No. 00-27159, DN 85. Gary Short was appointed as counsel to Debtor by order dated September 11, 2002, for the limited purpose of prosecuting a motion to dismiss the chapter 11 and to represent Debtor if the case converted to chapter 13. The case converted to chapter 13 on October 11, 2002, and, thereafter, on October 3, 2003, to chapter 7.[2]

Prepetition, Debtor worked as a home contractor and had been doing so for fourteen or fifteen years. He purchased real estate for renovation, leased property to others, bought equipment, and engaged in contracts to renovate other properties.

On December 2, 2002, Debtor filed a Motion to Sell Real Property Free and Clear of Encumbrances with respect to 3265 Long Hollow Road. Bankr. DN 149. The proposed sale was to his former counsel, Mr. Spyra. Located in a workshop on Debtor's property were thousands of dollars worth of business inventory and equipment owned by Debtor and some personal items of his then-girlfriend, Lori Dunmire.

While the chapter 13 case was pending and in the same month as the motion to sell was filed, Debtor contacted Joseph Shiraka of Northeast Liquidators with respect to auctioning personalty, *see* Adv. DN 14, Stipulation, at ¶ 9, specifically to liquidate the business inventory,

---

[2]The order converting the case to a chapter 7 was entered on August 20, 2003, but the conversion did not take effect until October 3, 2003. *See* Bankr. DN 305, 317.

2

tools, and Ms. Dunmire's personal items.  No motion with respect to this auction of personalty was ever filed and no order authorizing the sale was entered.  An auction contract was subsequently executed by Ms. Dunmire.  Debtor's counsel, Mr. Short, was unaware of the auction until after it occurred.

The auction sale itself took place at Debtor's Long Hollow Road property on January, 10, 2003, and generated gross proceeds of $8,840.05.  The auctioneer remitted net proceeds of $6,840.03[3] to Ms. Dunmire with the list of inventory which identified the amount paid for each item and who purchased it.  Once the inventory statement and proceeds were received, Ms. Dunmire and Debtor went through the inventory list and circled items sold that had been Ms. Dunmire's.  Ms. Dunmire testified that she and Debtor determined that $841.03 of the sale proceeds resulted from the sale of her individual property.  Therefore, the total attributable to Debtor's items was $5,999.

On January 15, 2003, Ms. Dunmire went to her bank, Parkvale Savings Bank, to cash the $6,840.03 check that was in her name and to deposit her $841.03 share of the proceeds.  She testified that after she deposited the $841.03, she was directed by Debtor to cash the remainder of the check and give the money to the Debtor.  However, the bank would only give her $2,000 in cash until the check cleared.  She testified that she turned the $2,000 over to Debtor and Debtor does not dispute this.  The remaining $3,999 was deposited into Ms. Dunmire's account.  On January 16, 2003, Ms. Dunmire wrote a check to cash from her account for the remainder of the Debtor's portion ($3,999).  The $3,999 check was cashed at Parkvale Savings Bank as

---

[3]From the gross was subtracted the auctioneer's commission, advertising costs, and labor charges of Mr. Shiraka's company.

3

indicated by the bank's endorsement stamp on the back. In total, Ms. Dunmire testified that she turned over $5,999 to Debtor from the proceeds of the auction sale.

Debtor also testified that he received $5,999. The evidence established that on January 16, 2003, Debtor made a deposit of $7,000 into his debtor-in-possession bank account at Commercial National Bank.[4] Because he received $2,000 in cash and $3,999 in the form of a check written to cash, no record of deposited checks exists for the $5,999. Debtor testified that the $7,000 was comprised of the sale proceeds and other cash on hand.

In early February of 2003, Mr. Spyra went to inspect the Long Hollow Road property that he was in the process of buying from Debtor. He testified that a neighbor informed him that an auction sale had taken place there several weeks earlier. Accordingly, on February 10, 2003, Mr. Spyra filed an Emergency Motion to Postpone Sale and Authorize Inspection of the Property, Bankr. DN 175, to permit a determination of whether any personalty instrumental to the sale had been removed from the premises and whether anything on the property had been damaged.

Mr. Short testified that after Mr. Spyra's motion was filed, he, Short, confronted Debtor about the sale. Based upon the information Debtor gave him, Mr. Short signed and filed an answer to the motion. Bankr. DN 178. Paragraph 5 of the answer stated that "A few miscellaneous items of Debtor's property, mainly some shelving and lumber, were also sold for not more than several hundred dollars". Bankr. DN 178 at ¶5. This statement was false. Mr. Short testified that Debtor later admitted to him that the sale included numerous items that sold

---

[4]These events transpired during the chapter 13 phase of this bankruptcy. The debtor-in-possession account existed because the bankruptcy began as a chapter 11.

4

for thousands of dollars prompting the filing of an amended answer on February 14, 2003. *See* Bankr. DN 183. The amended answer was signed by Debtor himself, not by counsel. Attached to the amended answer were a "Consumer Agreement" with a welding supplier, the auction agreement between Mr. Shiraka and Ms. Dunmire referring to "Contractor Tools, equipment & materials," the auction settlement statement and a list of approximately 437 items sold. *Id. See also* Deposition of Joseph Shiraka dated October 7, 2004, Trial Exhibit EE.

The course of events that began with the initiation of the auction led to the filing of the pending Complaint Objecting to Discharge on April 27, 2005. In his complaint, Mr. Spyra relies on 11 U.S.C. §727, citing §727(2) and (3). No such sections exist in §727. It appears from the context that Mr. Spyra is referring to §727(a)(2)(B).[5] In his proposed findings of fact, Adv. DN 21, Mr. Spyra's recitation seeks rulings consistent with findings that Debtor attempted to conceal ownership of the personalty that was sold by having Ms. Dunmire execute the auction contract, by failing to file a motion to retain the auctioneer or to sell the personalty, by accepting cash from Ms. Dunmire representing the proceeds of the auction sale, and by making false assertions with respect to the source of funds used for a trip to Las Vegas in January of 2003. *See* Adv. DN 21.

Applicable to this case in accordance with the complaint are §727(a)(2)(B) and §727(a)(4)(A). Section §727, in pertinent part, provides as follows:

(a) The court shall grant the debtor a discharge, unless –

---

[5]Mr. Spyra also asserts in paragraph 15 of the complaint that "[t]he Debtor is guilty of bankruptcy fraud and should be denied a discharge under 11 U.S.C. §727." Bankruptcy fraud is a crime under 18 U.S.C. §157. There is no evidence in the record of a conviction under that section. Therefore, this basis for denial of a discharge is not applicable.

5

> . . . (2)the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
> . . . (B) property of the estate, after the date of the filing of the petition;
> . . . (4) the debtor knowingly and fraudulently, in or in connection with the case –
> (A) made a false oath or account . . . .

11 U.S.C. §727.

Discharge under §727 has been described by Congress as "the heart of the fresh start provisions of the bankruptcy law." *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3rd Cir. 1993), quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977). Exceptions to discharge are to be construed liberally in favor of the debtor. *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995). However, the Bankruptcy Code is meant only to discharge the honest but unfortunate debtor. *Grogan v. Garner,* 498 U.S. 279, 286-87 (1991).

The facts adduced at trial support denial of discharge under §727(a)(2)(B). Mr. Sprya contends that Debtor intended to conceal this sale of goods from the trustee and the bankruptcy court. Debtor does not deny that he transferred the materials via the auction sale, but denies that he did so with the intent to defraud his creditors of the assets of the estate.

Mr. Spyra also alleges that Debtor lied to Attorney Short who then incorporated the false information into the Answer to the Motion to Postpone Sale and Authorize Inspection of the Property. This, it is alleged, was a false oath made with the intent to defraud creditors, thus requiring denial of discharge under §727(a)(4)(A). Debtor admits that he gave false information to his attorney with respect to the initial answer to the motion to postpone sale but denies that this incorrect statement was made with the intent to defraud his creditors.

§727(a)(2)(B)

Section §727(a)(2)(B) provides for an exception to the general rule that discharge should be granted. Two elements must exist before discharge may be denied under this section – an act and an improper intent. The party seeking a denial of discharge must prove that the transfer of property occurred after the date of the filing of the petition. Here, Debtor admits that property was transferred after the filing of the petition. The only remaining issue under §727(a)(2)(B) is whether the transfer was done with the requisite intent.

The party seeking denial of discharge has the burden of proving its objections to discharge by a preponderance of the evidence. *In re Dolata*, 306 B.R. 97, 146 (Bankr.W.D.Pa. 2004)(stating that since the decision in *Grogan v. Garner,* 498 U.S. 279 (1991), the burden of proof under §727(a) has been held to be by a preponderance. The court must find an actual intent to defraud. The majority view seems to be that the intent to "hinder, delay, or defraud" must be actual, not constructive. *In re Dolata*, 306 B.R. at 146. *See also In re Miller,* 39 F.3d 301 (11th Cir. 1994); *In re Bryant*, 1997 WL 375692 (Bankr. M.D.Fla. 1997). However, as it is unlikely that any debtor will admit a fraudulent intent, the focus must be on the surrounding "circumstantial evidence or on inferences drawn from a course of conduct." *In re Dolata*, 306 B.R. at 146. We find that Debtor's testimony was not credible.

Debtor admits to selling thousands of dollars worth of assets by transferring them to purchasers at the auction but claims he had no intention of defrauding his creditors. In fact, Debtor testified that he intended to use the sale proceeds to pay off his creditors and that, in fact, he did so. Trial exhibits of checks written to creditors tend to corroborate this testimony.

7

*See, e.g.,* Exhibits L-R. Nevertheless, it is clear that Debtor did not inform and had no intention of informing his counsel, the court, or his creditors about the sale.

Debtor claims that he did not realize the necessity of getting court approval for the auction sale. Mr. Short and Mr. Spyra both testified that during their respective tenure as counsel for the Debtor they each informed him that court approval was necessary in order to, *inter alia*, sell property, hire brokers or auctioneers and make major purchases. Mr. Short testified that Debtor never approached him about obtaining permission to conduct the sale and Mr. Short did not become aware of the sale until Mr. Spyra filed the Emergency Motion to Postpone Sale and Authorize Inspection of the Property. He also testified that he may not have spoken to Debtor specifically regarding sales of personalty inasmuch as Debtor had been in bankruptcy for three years by the time Mr. Short took on his representation.

The auction sale was the second instance of Debtor's failure to obtain court permission for a sale or purchase. On December 14, 2002, Debtor purchased a new truck without the approval of the court and then filed a Motion to Obtain Secured Credit, *Nunc Pro Tunc,* which this court dismissed on procedural grounds. *See* Bankr. DN 196, 197. The motion was refiled, *see* Bankr. DN 215, and an order was entered denying the motion, *see* Bankr. DN 226, inasmuch as the case was to be converted and Debtor's conduct in purchasing the truck was determined at the May 29, 2003, hearing to have been in violation of the Bankruptcy Code. Although at the May 29, 2003, hearing Mr. Short took the blame for the fact that no motion to borrow was filed before the purchase was made, we note that Debtor made the purchase of the truck without ascertaining that a motion had been filed and the request granted. Both Mr. Short and Mr. Spyra testified that they had told Debtor he had to have court approval before going

8

through with major purchases. We also credit Mr. Short's testimony at trial on February 4, 2005, that he told Debtor that prior court approval was necessary with respect to the truck purchase.

We find under all the circumstances that Debtor was actually aware of his obligations while in bankruptcy and, if not actually aware of the necessity for court approval for the sale, he had enough experience with the system to be on inquiry notice. Moreover, his failure to seek authority to sell personalty was deliberate. Debtor's attempt to depict himself as a complete innocent who had no knowledge of the process required to sell personal inventory is not persuasive. To the contrary, Debtor fully understood the process and exhibited a disregard for the necessity of court approval, with the attendant notice to creditors that would have alerted them to Debtor's actions.

Debtor testified that he had Ms. Dunmire execute the auction sale contract because she had more time to deal with the questions and needs of the auctioneer. This testimony is consistent in part with Ms. Dunmire's but inconsistent with the testimony of the auctioneer, Mr. Shiraka, a disinterested third party, who testified that Debtor wanted Ms. Dunmire to execute the contract because of problems surrounding a house fire and insurance. We do not credit Debtor's explanation. Under all the circumstances of this case, we conclude that Debtor's real purpose in having Ms. Dunmire sign the contract was to avoid having his name associated with the sale. Ms. Dunmire testified that Debtor's name was on the sale advertisement that was published in at least one local paper. No documentary evidence was proffered in support of this statement and neither Debtor nor the auctioneer testified with respect to this matter. We find that Debtor intended to conceal the sale from the court and his creditors.

Debtor also failed to mention his pending bankruptcy to Mr. Shiraka. Mr. Shiraka testified that if the bankruptcy had been mentioned there would have been multiple questions asked and changes made due to potential liens against the property. Mr. Shiraka was an experienced auctioneer and the mention of bankruptcy without further information or approval would have caused concern, potentially putting a stop to the sale. Instead, Debtor gave Mr. Shiraka a string of false information causing the auctioneer to proceed with the sale without major concern.

The auction contract was drawn up in the name of Ms. Dunmire even though her possessions made up a small minority of the items actually for sale. In a deposition of October 7, 2004, Trial Exhibit EE, Mr. Shiraka testified that Debtor told him that he did not want the auction sale proceeds in his name because of an insurance issue regarding a home burning down and that he wanted to sell the items because he and Ms. Dunmire were getting married and moving to Florida. Debtor denied this at trial, saying that he had Ms. Dunmire handle the matter because he was too busy and she did not mind doing so. Ms. Dunmire's testimony was that the sale was held because Debtor had to move out of the building where he had been storing his equipment and other things and that he intended to use the money to pay off some creditors. Deposition of Lori Dunmire, December 8, 2004, Trial Exhibit DD.

Mr. Shiraka testified that Debtor made the initial inquiry, requested that the contract be drawn up, and met with him on the property to evaluate the items to be sold. According to Mr. Shiraka, it was also Debtor alone who negotiated the terms and conditions of the contract even though Debtor claimed that this was done in the presence of Ms. Dunmire. Mr. Shiraka testified that met Ms. Dunmire only once and that was when he picked up the signed contract at

the residence she shared with Debtor. Mr. Shiraka testified that he prepared the contract and gave it to Debtor who had asked that the contract be in Ms. Dunmire's name.

Additionally, Debtor was in and out of the property while Mr. Shiraka inventoried the items in the workshop and Debtor attended a portion of the sale. Mr. Shiraka also testified that during the sale Debtor put in an appearance periodically.[6] Ms. Dunmire did not attend the sale. The credible evidence established that Debtor was the main contact for the sale and the owner of a majority of the goods sold, yet his name did not appear on the contract or on the check representing the proceeds of the sale of his property.[7] Ms. Dunmire's testimony confirmed that the vast majority of the items sold at the auction belonged to Debtor. Deposition of Lori Dunmire, December 8, 2004, Trial Exhibit DD.

Finally, Debtor testified that all proceeds from the auction sale were deposited into his debtor-in-possession bank account and used to pay his creditors. However, the actual check was sent to Ms. Dunmire who gave Debtor cash.

The fact of the sale did not come to light until Mr. Spyra inspected the real estate in connection with his intent to purchase it and was informed by a neighbor that an auction had taken place. The discovery caused Mr. Spyra to file an Emergency Motion to Postpone Sale and Authorize Inspection of Property. Bankr. DN 175. Mr. Short, on behalf of Debtor and relying on Debtor's statement to him, filed a response stating that "[a] few miscellaneous items" had been sold, "mainly some shelving and lumber" but for "not more than several hundred

---

[6] Ms. Dunmire testified that neither she nor Debtor attended the auction. Inasmuch as she was not present and Mr. Shiraka was, we credit Mr. Shiraka's testimony that Debtor was in and out of the property while the auction was going on.

[7] Mr. Shiraka testified that auction proceeds are automatically sent, in the form of a check, to the person who signed the contract.

11

dollars." Debtor asserted in his post-trial brief, Adv. DN 21, that he told his attorney that only a few items had been sold because counsel scared him by saying that the unauthorized sale could be viewed as criminal conduct. We find Debtor's stated reason for coming forth with correct information not credible. It was only after this court ordered an accounting of the sale that Debtor disclosed the extent of the sale in an amended answer.[8]

Debtor's receipt of the sale proceeds in cash, the line of incomplete information fed to Mr. Shiraka, the contract written in the name of Lori Dunmire, and the disregard for the requirement of court approval, despite having been advised by counsel that it was necessary, cumulatively belies Debtor's testimony that he conducted the sale with innocent intent. These actions kept Debtor's creditors and the court from becoming aware of the sale. Debtor testified that he used the proceeds to pay creditors and bills. It is not clear from the testimony and evidence whether Debtor paid prepetition obligations that were to be paid through the chapter 13 plan or whether he paid ongoing postpetition debts.

An additional factor influences our decision in this case and that is a vacation Debtor and Ms. Dunmire took to Las Vegas shortly after the sale proceeds were received. Debtor testified that Ms. Dummire paid the expenses associated with the trip but that she ran out of money so he withdrew funds from his account. He testified that the money was later redeposited in his account. Although Debtor's February 2003 bank statement shows two deposits after the Las Vegas trip (one on February 12 and another on February 14), there was an NSF (insufficient funds) check fee posted on February 11. Debtor testified that the source of the deposit was cash received from a job, not cash remaining from the proceeds of the auction

---

[8] We note that while counsel signed the first response, only Debtor signed the second.

sale. No evidence corroborates this statement, but it does not matter. The fact remains that, at least in part, Debtor used sale proceeds to fund a vacation while in bankruptcy.

In light of the foregoing, the Court concludes that Plaintiff has met his burden and that the sale was conducted with fraudulent intent.

§727(a)(4)(A)

Plaintiff's objection to discharge under §727(a)(4)(A) with respect to a false oath in the original answer to the motion to postpone sale cannot be sustained. For a discharge to be denied under this section, a false oath must be made knowingly and fraudulently on a material matter of the bankruptcy case. *In re Gioioso*, 979 F.2d 956, 958 (3rd Cir. 1992). "[T]he term 'oath' in Bankruptcy section 727(a)(4)(A) necessarily includes the unsworn declarations prescribed in the Official Forms." *In re Dolata, supra*, 306 B.R. at 124, citing *In re Leija*, 270 B.R. 497, 502-503 (Bankr.E.D.Cal. 2001). The Official Forms have been held to encompass schedules and statements of financial affairs. *In re Indian Palms Assocs.,* 61 F.3d 197, 206 (3d Cir. 1995). Subsequent disclosure, on a voluntary basis, of omitted or falsified information can be evidence of innocent intent but only if a reasonable explanation has been offered as to why the information was omitted or wrong in the first place. *In re Dolata, supra*, 306 B.R. at 124, citing *In re Ingle*, 70 B.R. 979, 984 (Bankr.E.D.N.C. 1987).

While the Answer to the Motion to Postpone Sale and Authorize Inspection of the Property was not a schedule or a statement of financial affairs, it was material to this bankruptcy as it dealt with the disposition of assets of the estate. However, it was filed by counsel for Debtor. Even though the answer was based on information supplied by Debtor, Debtor neither signed the pleading nor signed an affidavit attesting to its truth. The fact that he

13

lied to his attorney further supports the conclusion that he intended to conceal the sale of personalty from his creditors, however.[9]

An appropriate order shall issue.

DATE: September 30, 2005

_Judith K. Fitzgerald_
Judith K. Fitzgerald
United States Bankruptcy Judge

THE CASE ADMINISTRATOR SENT COPIES OF THIS MEMORANDUM OPINION TO:

:     Alan E. Cech, Esquire
Counsel for Plaintiff
10521 Perry Highway, Suite 115
Wexford, PA 15090

Dennis J. Spyra
Counsel for Plaintiff
119 First Avenue
Pittsburgh, PA 15222

Phillip S. Simon, Esquire
Gary W. Short, Esquire
Counsel for Debtor
Simon & Short LLC
Koppers Building, Suite 2317
436 7th Avenue
Pittsburgh, PA 15219
Carlota M. Bohm, Esquire
Chapter 7 Trustee
Houston Harbaugh

---

[9] Debtor testified that he provided incorrect information to his attorney pertaining to the sale because he was fearful of ramifications. He also testified that he was unaware that the information would be utilized in an answer or in court. However, this testimony carries no weight as it is clear that Debtor was no stranger to the bankruptcy process and knew that the information was to be utilized to prepare his response to a motion which, by its nature, would affect the sale of his realty, the primary asset in this estate.

14

Two Chatham Center, 12th Floor
Pittsburgh, PA 15219-3463

Joseph Sisca
Assistant U.S. Trustee
Suite 970
1001 Liberty Avenue
Pittsburgh, PA 15222

Mr. Daniel R. Finney
90 Warrendale Bayne Road
Apartment #1
Warrendale, PA 15086

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

|  |  |
|---|---|
| DANIEL R. FINNEY,<br>Debtor | Bankruptcy No. 00-27159 JKF<br>Chapter 7 |
| DENNIS J. SPYRA<br>Plaintiff |  |
| v.<br><br>DANIEL R. FINNEY<br>Defendant | Adversary No. 04-2539<br>**Related to Doc. No. 1, Complaint Objecting<br>to Discharge Under 11 U.S.C. §727** |

**ORDER**

**AND NOW**, this **30th** day of **September**, 2005, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that the Objection to Discharge under 11 U.S.C. §727 filed at Adversary No. 04-2539 is **SUSTAINED**.

It is **FURTHER ORDERED** that the Debtor is denied his discharge.

It is **FURTHER ORDERED** that a status conference will be separately scheduled to address the three remaining matters in the main bankruptcy case, i.e., Document Nos. 329, 297, 423, and the associated responses.

It is **FURTHER ORDERED** that the Clerk shall close this Adversary.

_Judith K. Fitzgerald_
Judith K. Fitzgerald                    jmd
United States Bankruptcy Judge

1

THE CASE ADMINISTRATOR SENT COPIES OF THIS ORDER TO:

Mr. Daniel R. Finney
90 Warrendale Bayne Road
Apartment #1
Warrendale, PA 15086

Alan E. Cech, Esquire
Counsel for Plaintiff
10521 Perry Highway, Suite 115
Wexford, PA 15090

Dennis J. Spyra
Counsel for Plaintiff
119 First Avenue
Pittsburgh, PA 15222

Phillip S. Simon, Esquire
Gary W. Short, Esquire
Counsel for Debtor
Simon & Short LLC
Koppers Building, Suite 2317
436 7th Avenue
Pittsburgh, PA 15219

Carlota M. Bohm, Esquire
Chapter 7 Trustee
Houston Harbaugh
Two Chatham Center, 12th Floor
Pittsburgh, PA 15219-3463

Joseph Sisca
Assistant U.S. Trustee
Suite 970
1001 Liberty Avenue
Pittsburgh, PA 15222